IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LOREN D. HAMMOND, #A1046824, | ) ) ) | CIV. NO. 09-00596 JMS/KSC |
| Plaintiff, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) | |
| DEPARTMENT OF PUBLIC SAFETY, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pro se Plaintiff Loren D. Hammond ("Plaintiff"), formerly an inmate at the Halawa Correctional Facility ("HCF"), brings this action pursuant to 42 U.S.C. § 1983, arising out of a group strip search that occurred while he was incarcerated at HCF.

Before the court is Defendants HCF Warden Nolan Espinda's ("Espinda"), adult correctional officer ("ACO") Sergeant Melvin Kiaaina's ("Kiaaina"), and ACO Lieutenant Jeannie Ueda's ("Ueda") Motion for Summary Judgment.  Mot., ECF No. 98.  Defendants seek dismissal of this action: (1) pursuant to 42 U.S.C. § 1997e(e), for Plaintiff's failure to allege a physical injury; (2) pursuant to 42 U.S.C. § 1997e(a), for Plaintiff's failure to exhaust his

administrative remedies; and (3) because Kiaaina is entitled to qualified immunity and Espinda and Ueda were not personally involved in the strip search. *See* Mem. in Support, ECF 98-1, 4-8. For the following reasons, the Motion is DENIED IN PART and GRANTED IN PART and this action is DISMISSED.

## I. <u>BACKGROUND</u>

### A. Plaintiff's Claims

In Count I, Plaintiff alleges that Kiaaina strip searched him in an area visible to other inmates and guards, violating his Fourth Amendment rights to be free from unreasonable searches and seizures. First Amended Complaint ("FAC"), ECF No. 58 at 5. In Count II, Plaintiff alleges that Kiaaina violated the Eighth Amendment when he verbally harassed and berated Plaintiff the next day, after Plaintiff's wife threatened to report Kiaaina to prison officials and the American Civil Liberties Union regarding the strip search. *Id.* at 6. Plaintiff claims that Kiaaina retaliated against him for Plaintiff's wife's threats, and fabricated false charges against him, resulting in Plaintiff's transfer to the special holding unit ("SHU").[1] *Id.* Finally, in Count III, Plaintiff alleges that Kiaaina violated the Fourteenth Amendment's guarantee of "equal protection of the law" by "treating

---

[1] Plaintiff says that, while he was in the SHU, he appeared before the Hawaii Paroling Authority in a SHU uniform, "implying that plaintiff was a troublesome inmate." FAC, ECF No. 58 at 6. Plaintiff, however, makes no specific claim regarding the denial of parole.

prisoners in a fashion so 'brutal' and 'offensive to human dignity' as to 'shock the conscience.'" *Id.* at 7.  Plaintiff also claims a violation of the Hawaii Constitution.

Plaintiff alleges no specific claims against Espinda and Ueda, other than his allegation that he worried Ueda *might* retaliate against him.  *See id.* at 5, Count I (stating "for the entire time . . . [Plaintiff] was anxious and terrified that Kiaaina, . . . and Ueda were going to retaliate").   Plaintiff generally claims that Ueda is liable for failing to oversee her subordinates, and Espinda is liable as superintendent of the prison.  *Id.* at 2-3.  Plaintiff alleges that Defendants' actions caused him humiliation, embarrassment, "and retaliation[,]" and requests compensatory damages and costs.

## B.    Uncontested Facts [2]

During recreation on August 30, 2009, Plaintiff saw HCF inmate Albert A. Pedro collide with another inmate and lose consciousness during a basketball game.  No member of HCF's correction staff, however, observed the collision and thus did not know what caused Pedro's injury.  Kiaaina Decl., ECF No. 104-2 at 2 ¶ 3; Pl.'s Opp'n, ECF No. 128 at 8; Pl.'s Decl., ECF No. 64 ¶¶ 6-8.  When Pedro regained consciousness, he was taken into the prison's control booth

---

[2] Unless otherwise noted, these uncontested facts are taken from Kiaaina's Declaration, ECF No. 104-2, Plaintiff's November 16, 2010 signed and verified affidavit, ECF No. 64, and Plaintiff's Opposition, ECF No. 128.

and Kiaaina ordered all of the inmates present at recreation, including Plaintiff, to assemble in the atrium next to the recreation yard, which fronted the windows of Module 3.  Kiaaina and three other guards then strip searched these inmates to determine whether they exhibited any signs suggesting a fight, assault, or gang activity, such as reddening of the skin, bruising, or weapons.  Kiaaina Decl., ECF No. 104-2 at 2 ¶ 3; Pl.'s Opp'n, ECF No. 128 at 8-9.

The strip search was conducted quickly; Kiaaina estimates the whole incident, from the time Pedro was discovered unconscious to the conclusion of the strip search, took no more than eight minutes.  Kiaaina Decl., ECF No. 104-2 ¶ 3.  The inmates were searched in groups of four, instructed to disrobe one at a time, visually inspected for marks indicating that a fight occurred, and then allowed to redress.  Kiaaina Decl., ECF No. 104-2 at 2 ¶ 3; Pl.'s Opp'n, ECF No 128 at 8-9.  The inmates were not touched or cavity searched.  Kiaaina Decl., ECF No. 104-2 at 2 ¶ 3; Pl.'s Opp'n, ECF No 128 at 9.  No signs of a fight or weapons were discovered.

The next day, Plaintiff called his wife and told her about the strip search; she then called Kiaaina and complained.  Kiaaina ordered Plaintiff and the other strip searched inmates to report to his office.  When they arrived, Kiaaina asked whose wife, mother, or girlfriend had called, and Plaintiff identified himself.

4

Plaintiff alleges that Kiaaina began to berate him.  Pl.'s Opp'n at 10-11; Pl.'s

Decl., ECF No. 64 ¶¶ 12-13.  Kiaaina claims that Plaintiff used obscene language

and refused a direct order.  Kiaaina Decl., ECF No. 104-2 at 3 ¶ 9.  Plaintiff admits

that he "yelled back at Sgt. Kiaaina, 'What you did was wrong and you know it!'"

Pl.'s Opp'n at 11.  Plaintiff also admits that he continued reading notices on

Kiaaina's office wall, despite Kiaaina's direct orders to stop and sit down.  *Id.*

¶¶ 16-17.

> Kiaaina sent Plaintiff to the medical unit and wrote an incident report

regarding the incident.  Plaintiff was then taken to the SHU on orders of the Watch

Commander, Captain Francis Hun.  On September 30, 2009, the adjustment

committee found Plaintiff guilty of using abusive or obscene language to a staff

member.  *See* Pl.'s Opp'n, ECF No. 128 at "Notice of Report of Misconduct and

Hearing."

## C.    Procedural History

> Plaintiff filed this action on December 15, 2009.  ECF No. 1.  After

several attempts, Plaintiff was granted leave to file his FAC on October 21, 2010,

which was ordered served on Defendants on November 5, 2010.  ECF Nos. 55 and

58.  On August 9, 2011, Defendants moved for summary judgment and the matter

was set for hearing on October 17, 2011.  ECF Nos. 98, 100.  Defendants filed a

Supplemental Brief on August 26, 2011.  ECF No. 104.

Plaintiff thereafter contacted the court numerous times seeking an

extension of time to respond to Defendants' Motion and/or to reschedule the

Motion, complaining that he was not receiving adequate access to the law library,

writing materials, a typewriter, or envelopes and stamps to mail his Opposition.

*See* ECF Nos. 102, 106, 111, 113, 125, 127.[3]  The court held several status

conferences on Plaintiff's allegations, instructed Hawaii Department of Public

Safety ("DPS") officials to look into the matter, and requested responses from

Defendants' attorney.  *See, e.g.*, ECF Nos. 103, 104, 105, 110.  The court twice

granted Plaintiff's requests for extension of the date to file his Opposition and

twice rescheduled the hearing date.  *See* ECF Nos. 113, 115, 121.  Despite these

accommodations, and although Plaintiff had been released from prison days earlier,

Plaintiff failed to attend the hearing on December 5, 2011, and failed to submit his

Opposition.  The court, nonetheless, was able to contact Plaintiff by telephone and

directed him to file his Opposition before the close of business on December 5,

2011, which he did.  ECF No. 128.  As such, the court considers the Opposition

---

[3] Plaintiff did not explain why he was able to write, mail, and file letters, motions, and changes of address to the court throughout this period, but was unable to respond to the Motion.

and its exhibits in deciding this Motion and determines that this matter can be decided without oral argument.  Local Rule 7.2(d).

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56 its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal

quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (stating that a party cannot "rest upon the mere allegations or

denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is

'material' only if it could affect the outcome of the suit under the governing law."

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor" (citations omitted)).

## III.  DISCUSSION

### A.    42 U.S.C. § 1997e(e): Failure to Allege Physical Injury

The Prison Litigation Reform Act ("PLRA") states: "[n]o Federal civil

action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior

showing of physical injury." 42 U.S.C. § 1997e(e).  Defendants argue that the

FAC must be dismissed in its entirety because Plaintiff fails to allege any physical

injury, claiming only embarrassment and humiliation.

In *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002), the Ninth

Circuit considered the standard in interpreting the "physical injury" requirement of

§ 1997e(e) and whether that "physical injury" requirement applies to claims other

than those for mental and emotional injury.  The court concluded that, "[t]o the

extent [a plaintiff] has actionable claims for compensatory, nominal or punitive

damages -- premised on violations of his Fourteenth Amendment rights, and not on

any alleged mental or emotional injuries -- we conclude the claims are not barred

by 1997e(e)." 289 F.3d at 629-30.

In Counts I and III, Plaintiff alleges that Kiaaina violated his Fourth

Amendment right of freedom from unreasonable search and seizure and Fourteenth

Amendment right to due process when he ordered and conducted the strip search in

view of other inmates and guards.  As governed by *Oliver*, while Plaintiff's

constitutional claims under the Fourth and Fourteenth Amendments may have little

financial value, they are still cognizable.  *See Cockcroft v. Kirkland*, 548 F. Supp.

2d 767, 776-77 (N.D. Cal. 2008); *see also Greene v. Rourk*, 2009 WL 1759638, at

*9 (E.D. Cal. June 22, 2009) (allowing compensatory, nominal, or punitive damage

claims under Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First and Fourteenth Amendments, and state law to proceed); *Curtis v. Benda*, 2009 WL 1065204 at *2 (W.D. Wash. Apr. 20, 2009) (concluding that Fourteenth Amendment claim for compensatory, nominal, and punitive damages is not barred by § 1997e(e)); *Hill v. Arpaio*, 2007 WL 1120305, at *4 (D. Ariz. Apr. 11, 2007) (same).

While Plaintiff cannot recover damages on his claims for humiliation and embarrassment, under *Oliver* and its progeny he may recover compensatory, punitive, and/or nominal damages for the violation of his Fourth and Fourteenth amendment rights, if he can establish a violation.  Defendants' Motion for Summary Judgment for Plaintiff's failure to allege physical injury is DENIED.

**B.    42 U.S.C. § 1997e(a): Failure to Exhaust**

"The [PLRA] requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions."  *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)); *Porter v. Nussle*, 534 U.S. 516, 525 n.4 (2002) (stating that the PLRA "creates 'a general rule of exhaustion' for prisoner civil rights cases").  Exhaustion applies to all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  *Porter*, 534 U.S. at

10

532.  Exhaustion is mandatory.  *Jones v. Bock*, 549 U.S. 199, 211 (2007);

*McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam).  A prisoner

must still exhaust all available administrative remedies even if he seeks monetary

or other relief that is unavailable through the grievance system.  *See Booth v.

Churner*, 532 U.S. 731, 741 (2001).  "[P]roper exhaustion of administrative

remedies is necessary" and exhaustion is not satisfied "by filing an untimely or

otherwise procedurally defective . . . appeal."  *Woodford v. Ngo*, 548 U.S. 81, 83-

84, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines

and other critical procedural rules . . . .").

        The PLRA's exhaustion requirement creates an affirmative defense

that a defendant may raise in an unenumerated Rule 12(b) motion.  *See Jones*, 549

U.S. at 213-14; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  The

defendant bears the burden of raising and proving the absence of exhaustion.

*Wyatt*, 315 F.3d at 1119.  In deciding a motion to dismiss for failure to exhaust, a

court may "look beyond the pleadings and decide disputed issues of fact."  *Id.* at

1119-20.  When a prisoner has failed to exhaust administrative remedies on a

claim, "the proper remedy is dismissal of the claim without prejudice."  *Id.* at 1120;

*Jones*, 549 U.S. at 223-24.

11

### *1.      Hawaii's Administrative Exhaustion Procedure*

The DPS's grievance requirements are set forth in Policy and Procedure Manual ("PPM") § 493.12.03(4.0), which "define[s] the boundaries of proper exhaustion."[4]  *See Jones,* 549 U.S. at 218; *see also* Defs.' Ex. A, ECF No. 99-3.  There is a three-step process to exhaust a grievance -- the inmate must submit a grievance at each step and wait for a response to that grievance or for the time to receive a response to expire before moving to the next step.  *See* ECF No. 36-3, PPM § 493.12.03.13-15.

At Step 1, the inmate must submit a grievance within fourteen days of the incident grieved.  *See* PPM § 493.12.03.13(i).  The Unit or Section Manager has fifteen working days from receipt of the grievance to investigate and respond. PPM § 493.12.03.14(h).  If the grievance is denied, the inmate has five days to file a Step 2 appeal.  PPM § 493.12.03.14(k) and § 493.12.03.15(a).  The Facility Administrator has fifteen working days from receipt of the Step 2 appeal to submit a written response.  PPM  § 493.12.03.15(e).  If the appeal is denied, the inmate has five days to file a Step 3 appeal.  PPM § 493.12.03.15(f).  The Division Administrator has twenty working days from the date of receipt of the inmate's

---

[4]  The DPS amended its grievance policies on June 8, 2011, to allow for an informal resolution first.  *See* http://hawaii.gov/psd/policies.  The court refers to the policy in effect in 2009.

Step 3 appeal to submit a written response.  PPM § 493.12.03.15(g)(6).  This

decision is final.  PPM § 493.12.03.16.  Prisoners must use this process to exhaust

their claims prior to filing suit.  *See Ngo*, 548 U.S. at 85-86; *McKinney*, 311 F.3d at

1199-1201.

### 2.   *Plaintiff Failed to Properly Exhaust Claims in Ground Two*

Defendants concede that Plaintiff exhausted his administrative

grievances regarding the August 30, 2009 strip search, which encompasses

Plaintiff's claims in Grounds I and III.[5]  Defendants argue that Count II is barred,

however, by Plaintiff's failure to submit any grievances regarding Kiaaina's

alleged verbal abuse, false charges, or retaliation.  *See* Mem. in Support, ECF No.

98-1 at 6.  The court agrees.

Plaintiff filed four grievances regarding the strip search: #160384

(Step 1), #162408 (Step 2), #132978 (Step 3), and #132981 (Amendment).

Nobriga Decl., ECF No. 99-1 ¶¶ 4-6.  First, on September 14, 2009, Plaintiff

submitted #160384, complaining about the strip search fourteen days earlier.

Plaintiff named only Kiaaina and detailed only Kiaaina's actions.  ACO Hoomana

---

[5]  Although Defendants first argued that the entire FAC must be dismissed for Plaintiff's failure to exhaust, they now assert that only Count II is barred.  *See* Mem. in Support, ECF No. 98-1 at 5 (stating "this Court must dismiss the [FAC]" for Plaintiff's failure to exhaust).

responded to the grievance on September 24, 2009, stating that the search was reasonable and furthered legitimate correctional goals.

On October 9, 2009, Plaintiff appealed in #162408. Plaintiff again named only Kiaaina and confined his appeal to Kiaaina's actions during the strip search. Plaintiff said that he would be satisfied if Kiaaina was "made aware of [the strip search] policy, suspended under investigation for further inhumane acts, and ordered to take a sensitivity class." ECF No. 99-2 at 2. On October 20, 2009, Espinda responded that the search was conducted quickly in the open to preserve the scene until an investigation was conducted and to determine if any of the inmates present showed physical injuries or marks that would suggest that a fight had taken place on the basketball court. *Id.*

Plaintiff received and immediately appealed Espinda's response on October 26, 2009, in #132978. *See* ECF No. 99-2 at 3. Plaintiff again named only Kiaaina, complained only about Kiaaina's actions during the strip search, and requested the same relief as before. Deputy Warden Eric Tanaka denied Plaintiff's Step 3 appeal on November 23, 2009.

Plaintiff also submitted an amendment to #132978, which he signed on November 21, postmarked November 23, and was received by prison officials on November 30, 2009. *See* ECF No. 99-2 at 4-5. The amendment again names

14

only Kiaaina and is confined to the August 30, 2009 strip search.  Plaintiff disputed Espinda's reasoning in his Step 2 response.  Linda Moga Rivera returned this amendment as untimely.  *Id.* at 4.

At no point did Plaintiff discuss or grieve the events that allegedly happened the day after the strip search, August 31, 2009, when Plaintiff's wife called Kiaaina and Kiaaina allegedly verbally abused and retaliated against Plaintiff by filing false charges.  Nor does Plaintiff ever name Ueda or Espinda in any grievance, or detail any action that either allegedly took during or after the strip search.  From the contents of Plaintiff's grievances, it does not appear that Ueda or Espinda had anything to do with the strip search.  Ueda is never named and Espinda's only apparent involvement was to respond to Plaintiff's Step 2 appeal.  Plaintiff submits copies of his grievances, but fails to rebut Defendants' argument.  As such, there is no genuine issue of material fact that Plaintiff failed to administratively exhaust his claims of retaliation, false charges, and adverse influence on his parole hearing in Ground Two and summary judgment is GRANTED as to this claim.

///

///

///

15

### C.     Ueda's and Espinda's Lack of Personal Participation

Plaintiff alleges no facts against Espinda and Ueda within any Count in the FAC; instead, Plaintiff simply names Espinda and Ueda based on their supervisory positions.  *See* FAC, ECF No. 58 at 2 (stating Ueda acted under color of law "[b]y failing to oversee the people who caused the wrong"); at 3 (stating Espinda acted under color of law "[a]s superintendent of the prison, [Espinda] manages its day-to-day operations and executes its policies").  In short, Plaintiff provides no facts showing Ueda's and Espinda's involvement in his claims.

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1948 (2009).  That is, "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Id*. at 1949.  Accordingly, supervisory officials "cannot be held liable unless they themselves" violated a constitutional right.  *Id*. at 1952.  Thus, supervisors "can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."  *Edgerly v. City*

*& Cnty. of S.F.*, 599 F.3d 946, 961-62 (9th Cir. 2010) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)).

A plaintiff must allege that the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor may also be liable for implementing "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991); *see Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).  However, an individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).

Nowhere does Plaintiff allege or suggest that Ueda or Espinda personally knew of or directed the strip search, instituted a strip search policy that was constitutionally infirm, failed to properly train Kiaaina, or had any other personal involvement in his claims.  Rather, Plaintiff complains that Espinda is responsible for "executing" the prison's policies, and faults Espinda for failing to insure that Kiaaina properly followed the prison's strip search policy.  Plaintiff does not, therefore, allege that the prison's strip search policy was deficient, but

only that Kiaaina failed to adhere to prison policy and should "be made [aware] of [§] 493.8.31." *See* Pl.'s Step 3 Grievance #132978, ECF No. 99-2 at 3.

Plaintiff alleges no facts showing that Espinda's and Ueda's lack of oversight, failure to train, or other supervisory duties precipitated his claims. Ueda's and Espinda's supervisory responsibilities do not equate to personal liability for every incident within HCF. There is no genuine issue of material fact that Ueda and Espinda are liable in their individual or official capacities for Plaintiff's claims. Summary judgment is GRANTED as to Plaintiff's claims against Espinda and Ueda and they are DISMISSED.

## D.    Qualified Immunity

Defendants argue they are entitled to qualified immunity from suit. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). In applying the two-part qualified immunity analysis, the court "must determine whether, taken in the light most favorable to [Plaintiff], Defendants' conduct amounted to a constitutional violation, and . . . whether or not the right was clearly established at the time of the violation." *McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009). If no

18

constitutional right was violated, the inquiry ends and the defendant prevails. *Saucier*, 533 U.S. at 201.  Courts are not required to address the two inquiries in any particular order.  Rather, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. at 236; *Bull v. City & Cnty. of S.F.*, 595 F.3d 964, 971 (9th Cir. 2010).

To be clearly established, "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation omitted).

### 1. *Plaintiff's Fourth Amendment Claim*

Prisoners may be subjected to strip searches if they are conducted in a reasonable manner.  *Bell v. Wolfish*, 441 U.S. 520, 561 (1979).  "The reasonableness of a search is determined by reference to its context." *Bull*, 595 F.3d at 971; *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988).  To determine the reasonableness of a search, the court must consider: (1) "the scope of

the particular intrusion," (2) "the manner in which it is conducted," (3) "the justification for initiating it," and (4) "the place in which it is conducted." *Bell,* 441 U.S. at 561 (citations omitted).[6] A defendant's subjective state of mind is irrelevant to the question of Fourth Amendment liability. *Nunez v. Duncan*, 591 F.3d 1217, 1228 (9th Cir. 2010); *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1142-43 (9th Cir. 2011) (applying the *Bell* factors and determining that the cross-gender strip search at issue was unreasonable).

Applying *Bell's* factors, the strip search here was reasonable as a matter of law. There were at least fifteen inmates in the recreation area when Pedro lost consciousness. It is uncontested that no prison officials witnessed Pedro's fall or what precipitated it. Once Pedro was taken away, the other inmates at the recreation area were removed from the recreation area to preserve the scene. Kiaaina quickly ordered the strip search in the atrium, before those inmates went back to their cells or into the general prison areas, to ascertain whether they had marks indicating that there had been a fight or concealed weapons. In contrast to the strip-searched inmates in *Nunez*, Plaintiff and the other inmates here were not randomly selected by the guards, but were searched because of their presence in

---

[6] Because Plaintiff focuses on the facts of the strip search and Kiaaina's actions and does not challenge the constitutionality of the DPS policy regulating strip searches, the test set forth in *Turner v. Safley*, 482 U.S. 78 (1987), does not apply. *See Byrd v. Maricopa County*, 629 F.3d 1135, 1141 n.6 (9th Cir. 2011).

the recreation area when Pedro lost consciousness. Thus, the scope of the search here was *more* reasonable than the search found to be reasonable in *Nunez*. In short, the strip search was reasonably limited in scope.

The strip search was also conducted in a reasonable manner and place. The inmates here were separated into groups of four, asked to undress, visually searched one at a time, and allowed to redress before the next inmate was searched. They were never touched and there was no body cavity search. The search lasted only minutes, thus each inmate was undressed for a relatively short period. The guards and inmates were all male; no cross-gender search was involved.[7] The search was also conducted in as much privacy as reasonably possible, considering the need to quickly search for signs of a fight or retrieve weapons before any physical marks disappeared or weapons could be discarded. Plaintiff's subjective distaste does not override the prison's important objectives in maintaining safety and security in the prison. *See Rickman v. Avaniti*, 854 F.2d 327, 328 (9th Cir. 1988); *Michenfelder*, 860 F.2d at 332-33 (collecting cases).

Finally, Plaintiff does not dispute that Kiaaina's justification for the search was to preserve institutional security. *See* Opp'n, ECF No. 128 at 9

---

[7] Although, even visual strip searches of male prisoners by female guards in *emergency situations*, such as here, does not violate an inmate's limited privacy right. *Byrd*, 629 F.3d at 1145; *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988).

(alleging the search was done "at the orders of Sgt. Kiaaina, in order to find out if Mr. Pedro's fall was accidental or an assault[] had occured [sic]").  When Kiaaina ordered the search, he had no way of knowing whether a fight had occurred or if another was imminent.  The search was prompted by a possible serious threat to institutional security.  Kiaaina Decl., ECF No. 104-2 at 2 ¶ 3.  A prison's interest in preventing violence among its inmates and maintaining institutional security is a legitimate penological interest, and the search of the inmates present when Pedro was knocked unconscious is reasonably related to this interest.  *See Bull*, 595 F.3d at 973-75 (citing *Turner*, 428 U.S. at 89).

The scope, place, manner, and justification for the strip search were reasonable and there was no Fourth Amendment violation.  Accordingly, Defendants are entitled to qualified immunity and their Motion for Summary Judgment as to Plaintiff's Fourth Amendment claim in Count I is GRANTED.

### 2.    *Plaintiff's Fourteenth Amendment Claim*

Plaintiff claims "[t]he Fourteenth Amendment prohibits states from denying 'equal protection of the law,'" and "from 'treating prisoners in a fashion so 'brutal' and 'offensive to human dignity' as to 'shock the conscience.'"  ECF No. 58, FAC at 7.

22

       *a.*    *Equal Protection Claim*

The Equal Protection clause "is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Caswell v. Calderon*, 363 F.3d 832, 837 (9th Cir. 2004). To maintain an equal protection claim, a plaintiff must show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). Plaintiff claims that those inmates who were present at recreation were subjected to an allegedly improper strip search. He alleges no other differentiation between the inmates who were searched and the inmates who were not searched. Plaintiff therefore points to nothing showing that he was treated differently than other *similarly situated* inmates. In other words, Plaintiff asserts only allegedly harmful treatment and says nothing about disparate treatment. *See Byrd*, 629 F.3d at 1140 (citing *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992), *as amended* (noting that "a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled . . ."). Plaintiff fails to state an equal protection claim.

b.    *Substantive Due Process*

Plaintiff cannot maintain a separate "shocks the conscience" substantive due process claim, as a matter of law, when the conduct at issue is governed by the specific Fourth Amendment standards used to evaluate prison officials' conduct.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (stating that where a specific constitutional amendment provides an "explicit textual source of constitutional protection" against a particular sort of government behavior, that amendment controls the analysis for the claim); *see also Albright v. Oliver*, 510 U.S. 266, 271-72  (1994) (discussing the limited scope of substantive due process rights and expressing "reluctan[ce] to expand the concept") (internal quotation omitted); *Armendariz v. Penman*, 75 F.3d 1311, 1325-26 (9th Cir. 1996) (en banc), *overruled in part on other grounds by Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007) ("Substantive due process analysis has no place in contexts already addressed by explicit textual provisions of constitutional protection, regardless of whether the plaintiff's potential claims under those amendments have merit."); *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029 (9th Cir. 2002) (stating that an inmate cannot "'double up' constitutional claims . . . .  Where a claim can be analyzed under 'an explicit textual source' of rights in the Constitution, a court may not also assess the claim under another

24

'more generalized,' source.") (citation omitted).  Because the Fourth Amendment

provides a more explicit textual source of constitutional protection for Plaintiff's

allegations, his substantive due process claim fails.

Moreover, the court has determined that the strip search was

reasonably related to the legitimate penological goals of institutional security, and

was therefore constitutional.  *See, e.g., Michenfelder*, 860 F.2d at 333.  Plaintiff

presents no facts to infer that Kiaaina ordered the strip search with the intent of

punishing Plaintiff or the others.  "In the absence of evidence of an intent to

punish, or evidence that [Defendants'] actions were unrelated to a 'legitimate

governmental objective,'" summary judgment is proper for Plaintiff's substantive

due process claim.  *Byrd*, 629 F.3d at 1140 (quoting *Bell*, 441 U.S. at 539).

There was no Fourteenth Amendment violation and Defendants are

entitled to qualified immunity on these claims.  Defendants' Motion for Summary

Judgment as to Plaintiff's Fourteenth Amendment claim in Count III is

GRANTED.

## IV.  CONCLUSION

Defendant's Motion for Summary Judgment is DENIED in part and

GRANTED in part.  Specifically, Defendants' Motion is denied insofar as it relies

on Plaintiff's failure to allege physical injury.  In all other respects, Defendants'

Motion for Summary Judgment is GRANTED.  Neither party addresses Plaintiff's claim under the Hawaii state constitution, and, because summary judgment is granted on Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over this claim.  28 U.S.C. § 1367(c)(3).  The Clerk of Court is DIRECTED to enter judgment in Defendants' favor and terminate this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 13, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Hammond v. Dep't of Public Safety*, Civ. No. 09-00596 JMS-KSC, Order Granting In Part And Denying In Part Defendants' Motion for Summary Judgment; psas\Ords\dmp\2011\Drafts\Hammond 09-596 JMS (MSJ)